IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MICHAEL E. WINEGARDNER

        Plaintiff,

vs.

                                    Civil Action 2:10-CV-361
                                    Judge Sargus
                                    Magistrate Judge King

MICHAEL J. ASTRUE, Commissioner
of Social Security,

        Defendant.

## OPINION AND ORDER

    Plaintiff seeks review of the denial by the Commissioner of Social Security of his applications for disability insurance benefits and supplemental security income. On August 9, 2011, the United States Magistrate Judge recommended that the decision of the Commissioner be affirmed and that this action be dismissed. *Report and Recommendation*, Doc. No. 16. This matter is now before the Court on plaintiff's objections to that *Report and Recommendation*. *Objection,* Doc. No. 17. The Court will consider the matter *de novo.* 28 U.S.C. §636(b); Fed. R. Civ. P. 72(b).

    The administrative law judge found that plaintiff's severe impairments consist of depressive disorder, pain somatization disorder, and status post right knee medial meniscus tear, patellofemoral chondromalacia and chronic ACL sprain. *Page ID#* 109. However, it is only plaintiff's mental impairments that are at issue in this case. The administrative law judge found that, from a mental standpoint, plaintiff has an ability to understand, remember and follow simple instructions, to perform tasks of moderate complexity

and to maintain attention, concentration and persistence sufficient for routine and repetitive tasks; plaintiff cannot work in environments with high demands and strict production quotas. *Page ID#* 113.

The record reflects reports or assessments of three mental health professionals. Marc E. W. Miller, Ph.D., consultatively evaluated plaintiff at the request of the state agency in January 2007 and opined, *inter alia*, that plaintiff is moderately-to-markedly impaired in his ability to deal with stress. *Page ID#* 435-36.

In February 2007, Todd Finnerty, Psy.D., reviewed the record on behalf of the state agency. In a narrative statement of plaintiff's ability to engage in work-related activities, Dr. Finnerty indicated that plaintiff is

> capable of interacting/relating to others appropriately. Clt [claimant] can understand, remember, and follow at least simple instructions and can likely perform tasks of moderate complexity as well. Clt is capable of maintaining attention, concentration, and persistence for routine and repetitive tasks. Clt should avoid work environments with high demands and strict production quotas.

*Page ID#* 439.

Kent Davis, D.O., treated plaintiff on three occasions from October to November 2008. *Page ID#* 575-80. In February 2009, Dr. Davis indicated that plaintiff was moderately impaired in his ability to carry through with detailed instructions, to complete tasks independently, to maintain attention and concentration for more than brief periods and to perform and complete work tasks in a normal work day or work week at a consistent pace. *Page ID#* 572-74. Plaintiff

2

was markedly impaired in his ability to respond appropriately to changes in the work setting. He was extremely impaired in his ability to perform at production levels expected by most employers, to work in cooperation with or proximity to others without being distracted by them, to relate to the general public and to maintain socially appropriate behavior. *Id.*

At the administrative hearing, the vocational expert testified that Dr. Finnerty's narrative assessment, assuming that that assessment reflected an "intact" ability to complete a normal workday and workweek, *Page ID# 81*, would permit a claimant with plaintiff's vocational profile to perform almost the full range of unskilled sedentary work and work as a counter rental clerk and restaurant host. *Page ID#* 77-78. The vocational expert also testified that, if the claimant were "off task . . . 11 to 25 percent of the workday or workweek," the hypothetical claimant could not perform any of the identified work. *Page ID#* 81.

The administrative law judge adopted Dr. Finnerty's narrative assessment of plaintiff's mental residual functional capacity, *Page ID#* 115, and relying on the testimony of the vocational expert found that plaintiff was not disabled because this residual functional capacity would permit the performance of jobs that exist in significant numbers. The Magistrate Judge recommended that these findings and conclusions be affirmed. *Report and Recommendation.*

In his objections, plaintiff contends that the administrative law judge misconstrued Dr. Finnerty's assessment and therefore erred in relying on the testimony of the vocational expert, to whom the

3

administrative law judge posed a flawed hypothetical. Plaintiff also challenges the administrative law judge's credibility assessment.

As noted *supra*, the administrative law judge referred the vocational expert to Dr. Finnerty's narrative assessment of plaintiff's mental residual functional capacity. Plaintiff argues that the administrative law judge should have referred the vocational expert to another aspect of Dr. Finnerty's report, in which Dr. Finnerty indicated that plaintiff was "moderately limited" in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Page ID#* 437-38. Plaintiff argues that, by not doing so, the administrative law judge failed to fairly consider the entire record; plaintiff also argues that this failure was particularly significant because, when the vocational expert was asked "to assume a moderate limitation in ability to complete a normal workday and workweek, as well as a moderate limitation in the ability to work at a consistent pace, . . . the VE stated that this would preclude the previously-identified work." *Objection*, p. 3.

The Magistrate Judge summarized the gist of plaintiff's contention as follows:

> A Mental Residual Functional Capacity Assessment form such as that utilized by Dr. Finnerty contains three sections. Section I, titled "Summary Conclusions," consists of a list of twenty categories of mental abilities and provides five different check-off boxes reflecting possible degrees of limitation for each category. The form expressly requires that a "[d]etailed explanation of the degree of limitation for each category . . ., as well as any other assessment information you

4

deem appropriate, is to be recorded in Section III (Functional Capacity Assessment)." *Page ID#* 437. Dr. Finnerty checked "not significantly limited" for six categories and "no evidence of limitation" for ten categories. Dr. Finnerty checked the box titled "moderately limited" in the four remaining categories: *i.e.*, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods and the ability to respond appropriately to changes in the work setting. *Page ID#* 437-38. Dr. Finnerty made no entry in Section II of the form, titled "Remarks." *Page ID#* 438. Section III of the form, titled "Functional Capacity Assessment," is intended to provide a narrative explanation of the assessments reflected in the "Summary Conclusions" of Section I. In his narrative summary, Dr. Finnerty indicated that plaintiff's activities of daily living are "functional" and that plaintiff is

> capable of interacting/relating to others appropriately. Clt can understand, remember, and follow at least simple instructions and can likely perform tasks of moderate complexity as well. Clt is capable of maintaining attention, concentration, and persistence for routine and repetitive tasks. Clt should avoid work environments with high demands and strict production quotas.

*Page ID#* 439. At the administrative hearing, the administrative law judge referred to this narrative statement in the hypothetical posed to the vocational expert.

Relying on *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010), plaintiff argues that the administrative law judge should have specifically recounted to the vocational expert the four categories in which Dr. Finnerty found moderate limitation of functioning in Section I of the form. *Ealy*, however, did not address the issue of whether an administrative law judge must include in the hypothetical not only the Section III Functional Capacity Assessment but also the categories of limitations in Section I of the form. Other courts that have addressed this issue have concluded that Section I of the form is merely a worksheet for the evaluator and does not constitute the evaluator's

5

> residual functional capacity assessment. *See Velez v. Comm'r of Soc. Sec.*, 2010 WL 1487599, *6,(N.D. Ohio Mar. 26, 2010) ("In general, . . . the administrative law judge is not required to include the findings in Section I in formulating residual functional capacity."); *Kachik v. Astrue*, 2010 WL 3852367, *6 (W.D. Pa. Sept. 27, 2010) (citing *Liggett v. Astrue*, 2009 WL 189934,*8 (E.D. Pa. 2009)); *Berry v. Astrue*, 2009 WL 50072, *15 (W.D. Va. Jan. 7, 2009); *Norris v. Astrue*, 2008 WL 4911794, *16 (E.D. N.C. Nov. 14, 2008); *Malueg v. Astrue*, 2007 WL 5480523, **6-7 (W.D. Wis. May 30, 2007). The form itself makes clear that it is the narrative reflected in Section III of the form that embodies the actual assessment and this Court agrees with those other courts that have held that an administrative law judge is not required to expressly include the Section I notations in formulating a claimant's residual functional capacity. The administrative law judge did not, therefore err in referring the vocational expert only to Dr. Finnerty's narrative assessment of plaintiff's mental residual functional capacity.

*Report and Recommendation,* pp. 7-8. This "worksheet" view of Section I of the form utilized by Dr. Finnerty is not, as plaintiff notes, mandated by binding authority from the United States Court of Appeals for the Sixth Circuit. However, as the administrative law judge commented, the form utilized by Dr. Finnerty requires that "the limitations contained in the checkboxes on the earlier pages must be interpreted to mean that the claimant can perform these functions to the extent described in the narrative portion." *Page ID#* 115 n.1. Under these circumstances, there is simply no reason to assume that Dr. Finnerty intended to impose greater restrictions on plaintiff's ability to engage in work-related functions than were reflected in his narrative assessment.

The Court also rejects plaintiff's argument that the administrative law judge improperly ignored the vocational expert's testimony that a claimant with Dr. Finnerty's "moderate" limitation in the ability to

6

complete a normal workday and workweek and to work at a consistent pace would be disabled. The transcript indicates that plaintiff's counsel unilaterally defined "moderate" as "off task in those areas 11 to 25 percent of the workday or workweek . . . [u]p to 25 percent of the day." *Page ID#* 81. However, that definition of the term "moderate" is nowhere found in the form utilized by Dr. Finnerty. In short, the Court is not persuaded by plaintiff's objection in this regard.

Plaintiff also challenges the administrative law judge's credibility determination. The administrative law judge found as follows:

> The claimant has been consistently described by his physicians as alert and oriented. His treatment has been conservative. This strongly undermines complaints of disabling pain and symptomatology. As noted above, a review of the "B" and "C" criteria of Listing 12.04 does not reflect a "marked" limitation in any area of the claimant's mental functioning.
>
> In addition to the general lack of objective evidence to support his subjective complaints, there are other considerations that weigh against the claimant's overall credibility.
>
> As delineated above, the claimant was able to engage in a wide variety of activities. The ability to engage in these activities is not indicative of someone with pain and other symptoms so severe that all work activity would be precluded.
>
> In summary, considering the criteria enumerated in the Regulations, Rulings and case law for evaluating the claimant's subjective complaints, the claimant's reported limitations were not persuasive to establish an inability to perform the range of work assessed herein. The location, duration, frequency, and intensity of the claimant's alleged symptoms, as well as precipitating and aggravating factors, are adequately addressed and accommodated in the above residual functional capacity. The claimant denied experiencing any side adverse effects from the medications, and the claimant's daily activities

7

>are not credibly restricted to the extent that the claimant would be precluded from the range of work assessed herein. The lack of support for the claimant's subjective complaints and functional limitations is not due to any unexplained mental impairment.

*Page ID#* 114-15. As plaintiff notes, the activities delineated by the administrative law judge included grocery shopping late at night when the store was not crowded, prior work as an occasional ambulance volunteer, and attendance at church four times per week with involvement in plaintiff's church. Plaintiff argues that it was error for the administrative law judge "to conflate the ability to perform household chores . . . with the ability to work" and to "equate Mr. Winegardner's regular church attendance and involvement with a capacity to work." *Objection*, pp. 7-8 (citations omitted). This argument simply mischaracterizes the administrative law judge's credibility determination. In finding that plaintiff's subjective complaints were not fully credible, the administrative law judge noted that those complaints were not consistent with the objective medical evidence, with plaintiff's conservative treatment or with plaintiff's activities. Certainly, it would be unfair to read the administrative decision as equating mere church attendance with a capacity to work.[1] An administrative law judge's "findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an [administrative law judge] is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 531

---

[1] It is interesting to note that Dr. Davis' treatment notes referred to plaintiff's success in speaking in front of a large audience and aspiration to become a youth minister. *See Page ID#* 575.

8

(6th Cir. 1997). The Court concludes that the administrative law judge did not err in his credibility determination in this case.

Where, as here, the administrative law judge reached his decision by applying the proper legal standards and where that decision is supported by substantial evidence, this Court is without authority to overturn that decision. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).

Plaintiff's *Objection*, Doc. No. 17, is **DENIED**. The *Report and Recommendation*, Doc. No. 16, is **ADOPTED and AFFIRMED**. The decision of the Commissioner is **AFFIRMED**. This action is hereby **DISMISSED**.

The Clerk shall enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).

9-1-2011
Date

Edmund A. Sargus, Jr.
United States District Judge